ELMORE, Judge.
 

 *636
 
 In 2009, the State charged James Harold Courtney, III (defendant) with first-degree murder for the shooting death of James Deberry. At trial the jury hung, and the trial
 
 *414
 
 court declared a mistrial on the ground of jury deadlock. Four months later, the prosecutor filed a N.C. Gen. Stat. § 15A-931 voluntary dismissal of the murder charge with the trial court, acknowledging on the form that its dismissal was being entered after defendant had already faced jeopardy for the charge and explaining the following reason for its dismissal: "Hung jury, State has elected not to re-try case."
 

 In 2015, however, after acquiring new evidence it believed strengthened its case, the State recharged defendant with first-degree murder for Deberry's homicide. Before his second trial, defendant moved to dismiss the new murder indictment, claiming a double jeopardy bar, which the trial court summarily denied. The second jury found defendant guilty of second-degree murder, and the trial court entered a judgment sentencing him to approximately eighteen to twenty-two years in prison.
 

 On appeal, defendant concedes that the State was permitted to retry him on the mistried murder charge without violating his double jeopardy rights because the hung-jury mistrial did not terminate the initial jeopardy that attached when the first jury was empaneled and sworn. He argues, however, that the prosecutor's post-mistrial voluntary dismissal of the mistried charge terminated that initial continuing jeopardy and, therefore, the State was barred from reprosecuting him four years later for the same offense. After careful consideration, we agree.
 

 *637
 
 The Double Jeopardy Clause bars successive prosecutions for the same offense after acquittal. This protection "serves a constitutional policy of finality for the defendant's benefit[,]"
 
 Brown v. Ohio
 
 ,
 
 432 U.S. 161
 
 , 165,
 
 97 S.Ct. 2221
 
 , 2225,
 
 53 L.Ed. 2d 187
 
 (1977) (citation and quotation marks omitted), and "guarantees that the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."
 
 Blueford v. Arkansas
 
 ,
 
 566 U.S. 599
 
 , 605,
 
 132 S.Ct. 2044
 
 , 2050,
 
 182 L.Ed. 2d 937
 
 (2012) (citation and quotation marks omitted).
 

 In North Carolina, a prosecutor may take "a simple and final dismissal which terminates the criminal proceedings under that indictment" at any time.
 
 State v. Lamb
 
 ,
 
 321 N.C. 633
 
 , 641,
 
 365 S.E.2d 600
 
 , 604 (1988) (citing N.C. Gen. Stat. § 15A-931 ). While "[s]ection 15A-931 does not bar the bringing of the same charges upon a new indictment,"
 

 id.
 

 (citing N.C. Gen. Stat. § 15A-931 official cmt.), in this case defendant's constitutional right to be free from double jeopardy did,
 
 see
 
 N.C. Gen. Stat. § 15A-931 official cmt. (opining that reprosecution would be barred "if jeopardy had attached when the ... charge[ ] w[as] dismissed").
 

 We hold that when a prosecutor takes a section 15A-931 voluntary dismissal of a criminal charge after jeopardy had attached to it, such a post-jeopardy dismissal is accorded the same constitutional finality and conclusiveness as an acquittal for double jeopardy purposes. Further, while the State has the undisputed right to retry a hung charge, we hold that a prosecutor's election instead to dismiss that charge is binding on the State and tantamount to an acquittal.
 

 We thus hold that here, by virtue of the prosecutor's post-jeopardy dismissal of the murder charge, regardless of whether it was entered after a valid hung-jury mistrial but before a permissible second trial, the State was barred under double jeopardy principles from retrying defendant four years later for the same charge. Accordingly, we vacate the judgment entered against defendant in 15 CRS 213392.
 

 I. Background
 

 On Halloween 2009, James Deberry was fatally shot outside his apartment in Raleigh. The State's evidence tended to show that when responding officers arrived, Deberry was still conscious and told a detective that "a friend upstairs" had shot him. Monica Bustamante, Deberry's fiancé, was with him and explained to the detective that "what he meant was Jar, a friend that lived upstairs, or one of Jar's friends."
 

 *638
 
 Police determined that "Jar" was David Moses. The State's evidence also indicated that Moses and defendant
 
 *415
 
 had grown up together in New York; that defendant met Deberry at Moses' apartment; that Deberry sold a few pounds of low-grade marijuana to defendant, and likely others, for lower-level distribution; and that Deberry's homicide may have been drug-related.
 

 The State charged defendant and Moses with first-degree murder. But in return for agreeing to testify at defendant's trial, the State dropped the charge against Moses and granted him immunity. After the jury hung at defendant's first trial, the trial court declared a mistrial, and defendant was released on bail.
 

 On 16 December 2010 and 10 February 2011, the trial court issued "homicide status hearing" (original in all caps) orders containing handwritten notes from the judge indicating that the matter was set to be reviewed at a later status hearing to determine whether the State was going to retry the case. On 14 April 2011, the prosecutor filed a "Dismissal/Notice of Reinstatement" with the trial court, indicating that it was voluntarily dismissing the murder charge. The form, Form AOC-CR-307, is separated into three sections: (1) "Dismissal," (2) "Dismissal with leave," and (3) "Reinstatement." The prosecutor filled in the "Dismissal" section, checking the following boxes: (1) "The undersigned prosecutor enters a dismissal to the above charge(s) and assigns the following reasons:" and (2) "4. Other: (
 
 specify
 
 )." Next to box 4, the prosecutor wrote: "hung jury, State has elected not to re-try case." Under box 4 the form contains a typewritten sentence concerning whether a jury had been impaneled and whether evidence had been presented, with instructions to edit the sentence to reflect whether the voluntary dismissal was being entered before or after jeopardy had attached to the charge. With the handwritten edits, that sentence reads as follows (omissions are stricken; additions are underlined): "A jury has
 
 not
 
 been impaneled
 
 nor
 

 and
 
 has [sic] evidence been introduced."
 

 In 2013 and 2014, the State acquired new evidence putting Ivan McFarland, a friend of both defendant and Moses from New York, at the scene of Deberry's shooting, and obtained cellphone records indicating that five calls were made between defendant's and McFarland's cellphones during the day of the shooting. In 2015, the State charged McFarland and recharged defendant with Deberry's murder.
 
 [1]
 
 On 6 July 2015, a grand jury reindicted defendant for first-degree murder.
 

 *639
 
 Before his second trial, defendant moved to dismiss the 2015 murder indictment on double jeopardy grounds. Defendant conceded that the State was permitted to retry him for Deberry's homicide following the December 2010 hung-jury mistrial. But he argued that since the prosecutor four months later in April 2011 instead elected under N.C. Gen. Stat. § 15A-931 to voluntarily dismiss the 2009 murder indictment, after he had already faced jeopardy for that charge at the first trial, the Double Jeopardy Clause barred the State from retrying him for the same offense. The trial court summarily denied the motion.
 

 Additionally, the following events occurred which we briefly address only to provide context for defendant's other non-dispositive alleged errors. Before his second trial, defendant also moved to dismiss the 2015 murder indictment on speedy trial grounds, which the trial court denied; and he objected to not having been formally arraigned at least a week before he was tried and requested a continuance, which the trial court denied, immediately arraigned him, and began trial the same day. At trial, the trial court admitted cellphone record evidence under Rule 802(6)'s business-records exception to the rule against hearsay, over defendant's objection that the records were not properly authenticated under Rule 902.
 

 After the State rested its case, defendant presented no evidence. The jury convicted defendant of second-degree murder, and the trial court entered a judgment sentencing
 
 *416
 
 him to 220 to 273 months in prison. Defendant appeals.
 

 II. Alleged Errors
 

 On appeal, defendant asserts the trial court erred by denying his motions to dismiss the second murder charge on both double jeopardy and speedy trial grounds. First, he argues his double jeopardy dismissal motion was improperly denied because the prosecutor's post-mistrial section 15A-931 voluntary dismissal of the murder charge terminated its jeopardy that attached at the first trial and continued after the hung-jury mistrial and, thus, the State was barred under the Double Jeopardy Clause from retrying him for Deberry's murder. Second, and alternatively, defendant argues that if the voluntary dismissal did not terminate the continuing original jeopardy that attached at the first trial, his speedy trial rights were violated by the State's seven-year delay from his first arrest to the second trial; or, defendant argues, the case
 
 *640
 
 should be remanded for a new speedy trial hearing, because the trial court failed to account for the four years between the dismissal entry and his reindictment when the court balanced
 
 Barker
 
 's length-of-delay factor in its speedy trial analysis.
 

 Third, defendant argues the trial court erred by admitting the phone records into evidence under Rules 803(6)'s public-records hearsay exception over his Rule 902(a)(2) authentication objection. And fourth, he asserts the trial court violated his statutory right under N.C. Gen. Stat. § 15A-943(b) not to be tried within seven days of his arraignment because he was formally arraigned and tried the same day.
 

 Because we conclude that defendant's first argument is dispositive and warrants vacating the judgment entered against him, we analyze only the double jeopardy issue presented and decline to address his remaining arguments.
 

 III. Double Jeopardy
 

 Defendant asserts his double jeopardy rights were violated when he was reprosecuted for first-degree murder. He argues the prosecutor's voluntary dismissal of the 2009 murder charge terminated the jeopardy that attached at the first trial and continued following the hung-jury mistrial. Thus, defendant contends, the trial court improperly denied his pretrial motion to dismiss the 2015 murder charge before his second trial, and he unconstitutionally faced jeopardy twice for the same offense.
 

 A. Issue Preservation
 

 As a threshold matter, the State asserts that defendant failed to preserve his double jeopardy claim because he failed to object to the hung-jury mistrial. The State's preservation argument is meritless.
 

 The State cites to
 
 State v. Lachat
 
 ,
 
 317 N.C. 73
 
 ,
 
 343 S.E.2d 872
 
 (1986), for support. In
 
 Lachat
 
 , our Supreme Court interpreted its decision in
 
 State v. Odom
 
 ,
 
 316 N.C. 306
 
 ,
 
 341 S.E.2d 332
 
 (1986), as holding that, in "a noncapital case, ... a defendant is not entitled by reason of former jeopardy to dismissal of the charge against him, where he failed to object to the trial court's termination of his first trial by a declaration of mistrial."
 
 Id.
 
 at 85,
 
 343 S.E.2d at
 
 878 (citing
 
 Odom
 
 ,
 
 316 N.C. at 309
 
 ,
 
 341 S.E.2d at
 
 334 ). The
 
 Lachat
 
 Court, however, after declining to extend
 
 Odom
 
 's objection requirement to capital cases, clarified that its decision in
 
 Odom
 
 was limited to situations where a defendant is given notice and opportunity to object before a mistrial is declared but fails to do so. Thus, the
 
 Lachat
 
 Court explained, it was declining to apply
 
 Odom
 
 's objection requirement in part because "both declarations of mistrial by
 
 *641
 
 the trial court were entered on the trial court's own motion and without prior notice or warning to the defendant."
 
 Id.
 
 at 86,
 
 343 S.E.2d at 879
 
 . The
 
 Lachat
 
 Court determined that "requir[ing] [the defendant] to go through the formality of objecting after a mistrial had already been declared or lose her protection against double jeopardy would be a triumph of form over substance[,]"
 
 id.
 
 at 86,
 
 343 S.E.2d at 879
 
 , "particularly [where] the defendant properly raised the issue of former jeopardy before the commencement of the second trial by filing her written motion to dismiss the charge against her,"
 
 id.
 
 at 87,
 
 343 S.E.2d at 879
 
 . Indeed, the
 
 Lachat
 
 Court reasoned, "it was the trial court's denial of that motion which preserved this issue
 
 *417
 
 for appeal."
 
 Id.
 
 at 87,
 
 343 S.E.2d at 879
 
 . This authority, however, is simply inapplicable here.
 

 The former jeopardy defenses raised by both defendants in
 
 Odom
 
 and
 
 Lachat
 
 before their second trials were grounded in their assertion that the prior mistrial was improperly declared, implicating their double jeopardy right to have their guilt or innocence determined by the first jury. Here, defendant neither disputed the validity of the hung-jury mistrial nor used it to support his former jeopardy defense; rather, his double jeopardy claim was grounded in his assertion that the State's voluntary dismissal of the murder charge terminated the jeopardy that attached at the first trial. Additionally, the constitutional protection at issue here is not defendant's right to have his guilt or innocence decided by a particular tribunal, but his right to avoid successive prosecutions for the same offense. Further, defendant here, like the defendant in
 
 Lachat
 
 , properly raised his former jeopardy defense before the second trial by filing a written motion to dismiss the murder charge on double jeopardy grounds, and it was the trial court's denial of that motion that preserved this issue for appeal. Accordingly, despite defendant's failure to object to the hung-jury mistrial, his former jeopardy argument is preserved.
 

 B. Discussion
 

 As we review alleged double jeopardy violations
 
 de novo
 
 ,
 
 see, e.g.
 
 ,
 
 State v. Schalow
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 567
 
 , 571 (2016) (citation omitted),
 
 disc.
 

 rev. allowed
 
 ,
 
 369 N.C. 521
 
 ,
 
 796 S.E.2d 791
 
 (2017),
 
 and disc. rev. improvidently allowed
 
 ,
 
 370 N.C. 525
 
 ,
 
 809 S.E.2d 579
 
 (2018), it follows that we review
 
 de novo
 
 a trial court's denial of a motion to dismiss an indictment on double jeopardy grounds.
 

 The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. The Clause " 'guarantees that the State shall not be permitted to make repeated attempts to
 
 *642
 
 convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' "
 
 Blueford v. Arkansas
 
 ,
 
 566 U.S. 599
 
 , 605,
 
 132 S.Ct. 2044
 
 , 2050,
 
 182 L.Ed. 2d 937
 
 (2012) (quoting
 
 United States v. Martin Linen Supply Co.
 
 ,
 
 430 U.S. 564
 
 , 569,
 
 97 S.Ct. 1349
 
 , 1353,
 
 51 L.Ed. 2d 642
 
 (1977) ).
 

 Under the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may [not] be tried ... a second time for the same offense."
 
 Sattazahn v. Pennsylvania
 
 ,
 
 537 U.S. 101
 
 , 106,
 
 123 S.Ct. 732
 
 , 736-37,
 
 154 L.Ed. 2d 588
 
 (2003) (citing
 
 North Carolina v. Pearce
 
 ,
 
 395 U.S. 711
 
 , 717,
 
 89 S.Ct. 2072
 
 ,
 
 23 L.Ed. 2d 656
 
 (1969) ). "Where successive prosecutions are at stake, the guarantee serves 'a constitutional policy of finality for the defendant's benefit.' "
 
 Brown v. Ohio
 
 ,
 
 432 U.S. 161
 
 , 165,
 
 97 S.Ct. 2221
 
 , 2225,
 
 53 L.Ed. 2d 187
 
 (1977) (quoting
 
 United States v. Jorn
 
 ,
 
 400 U.S. 470
 
 , 479,
 
 91 S.Ct. 547
 
 , 554,
 
 27 L.Ed. 2d 543
 
 (1971) (plurality opinion) ). "The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.' "
 
 Arizona v. Washington
 
 ,
 
 434 U.S. 497
 
 , 503,
 
 98 S.Ct. 824
 
 , 829,
 
 54 L.Ed. 2d 717
 
 (1978) (quoting
 
 Fong Foo v. United States
 
 ,
 
 369 U.S. 141
 
 , 143,
 
 82 S.Ct. 671
 
 , 672,
 
 7 L.Ed. 2d 629
 
 (1962) ). The federal protection against successive prosecutions for the same offense is also guaranteed by the Law of the Land Clause of the North Carolina Constitution.
 
 See
 

 State v. Brunson
 
 ,
 
 327 N.C. 244
 
 , 247,
 
 393 S.E.2d 860
 
 , 863 (1990) (citing N.C. Const. art. I, § 19 ; other citations omitted);
 
 see also
 

 State v. Shuler
 
 ,
 
 293 N.C. 34
 
 , 42,
 
 235 S.E.2d 226
 
 , 231 (1977) ("It is a fundamental principle of the common law, guaranteed by our Federal and State Constitutions, that no person may be twice put in jeopardy of life or limb for the same offense." (citations omitted) ).
 

 Defendant concedes that the hung-jury mistrial was a "nonevent" that did not terminate the initial jeopardy attached to the murder charge when the first jury was empaneled and sworn, and thus the State was
 
 *418
 
 permitted to retry him on that mistried charge without unlawfully twice subjecting him to jeopardy. He argues the State's post-mistrial section 15A-931 voluntary dismissal of that mistried charge was a jeopardy-terminating event functionally equivalent to an acquittal of that charge, thereby barring the second trial.
 

 In its brief, the State does not address the jeopardy-terminating effect on the murder charge of the prosecutor's voluntary dismissal;
 

 *643
 
 rather, it argues that where, as here, a proper hung-jury mistrial was declared, " 'in legal contemplation there has been no trial.' "
 
 Lachat
 
 ,
 
 317 N.C. at 82
 
 ,
 
 343 S.E.2d at 877
 
 (quoting
 
 State v. Tyson
 
 ,
 
 138 N.C. 627
 
 , 629,
 
 50 S.E. 456
 
 (1905) ). According to the State, because the "hung jury mistrial rendered the original trial 'a nullity' such that there was 'no trial' at all," the "clock was effectively rewound to before the impaneling of a jury and corresponding attachment of jeopardy." Thus, the State continues, "jeopardy cannot be terminated when it never attached in the first place."
 

 "There are few if any rules of criminal procedure clearer than the rule that 'jeopardy attaches when the jury is empaneled and sworn.' "
 
 Martinez v. Illinois
 
 , --- U.S. ----,
 
 134 S.Ct. 2070
 
 , 2074,
 
 188 L.Ed. 2d 1112
 
 (2014) (citations omitted);
 
 see also
 

 Crist v. Bretz
 
 ,
 
 437 U.S. 28
 
 , 35 n.10,
 
 98 S.Ct. 2156
 
 , 2160 n.10,
 
 57 L.Ed. 2d 24
 
 (1978) ("[J]eopardy does attach even in a trial that does not culminate in a jury verdict[.] ..." (citation omitted) ). Here, jeopardy attached when the first jury was empaneled and sworn, and despite the State's theoretical argument, there can be no doubt that defendant faced the direct peril of being convicted and punished for first-degree murder at that trial. Jeopardy does not "unattach" when the jury hangs.
 
 See
 

 Yeager v. United States
 
 ,
 
 557 U.S. 110
 
 , 118,
 
 129 S.Ct. 2360
 
 , 2366,
 
 174 L.Ed. 2d 78
 
 (2009) ("
 
 [A] jury's inability to reach a decision
 
 is the kind of 'manifest necessity' that
 
 permits
 
 the declaration of a mistrial and
 
 the continuation of the initial jeopardy that commenced when the jury was first impaneled
 
 ." (emphasis added) (citations omitted) ).
 

 " '[T]he conclusion that jeopardy has attached,' however, 'begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.' "
 
 Martinez
 
 ,
 
 134 S.Ct. at 2075
 
 (quoting
 
 Serfass v. United States
 
 ,
 
 420 U.S. 377
 
 , 390,
 
 95 S.Ct. 1055
 
 , 1064,
 
 43 L.Ed. 2d 265
 
 (1975) ). "The remaining question is whether the jeopardy ended in such a manner that the defendant may not be retried."
 

 Id.
 

 (citation omitted).
 

 The Double Jeopardy Clause does not bar retrial of a hung charge because a hung-jury mistrial is "not an event that terminates the original jeopardy...."
 
 Richardson v. United States
 
 ,
 
 468 U.S. 317
 
 , 326,
 
 104 S.Ct. 3081
 
 , 3086,
 
 82 L.Ed. 2d 242
 
 (1984). But the Clause bars retrial after a jeopardy-terminating event, such as (1) a jury acquittal,
 
 see, e.g.
 
 ,
 
 Evans v. Michigan
 
 ,
 
 568 U.S. 313
 
 , 328,
 
 133 S.Ct. 1069
 
 , 1080,
 
 185 L.Ed. 2d 124
 
 (2013) ("There is no question that a jury verdict of acquittal precludes retrial...." (citation omitted) ); (2) a judicial acquittal,
 
 see
 

 id.
 

 at 319
 
 ,
 
 133 S.Ct. at 1075
 
 (explaining that a judicial " 'acquittal' includes 'a ruling by the court that the evidence is insufficient to convict,' a 'factual finding that necessarily establishes the criminal defendant's lack of criminal
 
 *644
 
 culpability,' and any other 'ruling which relate[s] to the ultimate question of guilt or innocence' " (citation and brackets omitted) ); or (3) certain non-defense-requested terminations of criminal proceedings, such as non-procedural dismissals or improperly declared mistrials, that for double jeopardy purposes are functionally equivalent to acquittals.
 
 See, e.g.
 
 ,
 
 Lee v. United States
 
 ,
 
 432 U.S. 23
 
 , 30,
 
 97 S.Ct. 2141
 
 , 2145,
 
 53 L.Ed. 2d 80
 
 (1977) ("A mistrial ruling invariably rests on grounds consistent with reprosecution, while a dismissal may or may not do so." (internal citation omitted) );
 
 see also
 

 United States v. Scott
 
 ,
 
 437 U.S. 82
 
 , 99-100,
 
 98 S.Ct. 2187
 
 , 2198,
 
 57 L.Ed. 2d 65
 
 (1978) (holding that there is no jeopardy bar to a second trial where the trial court grants a defendant-requested motion to dismiss a charge on a basis unrelated to factual guilt or innocence on the ground that the Double Jeopardy Clause "does not relieve a defendant from the consequences of his voluntary choice").
 

 In determining whether a judicial ruling, whether labeled a dismissal or mistrial,
 
 *419
 
 amounts to an acquittal barring retrial, "[t]he critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged."
 
 Lee
 
 , 432 U.S. at 30, 97 S.Ct. at 2145 ;
 
 see also
 

 Evans
 
 ,
 
 568 U.S. at 319
 
 ,
 
 133 S.Ct. at 1075
 
 (explaining that "substantive rulings" of true judicial acquittals "stand apart from procedural rulings that may also terminate a case midtrial," such as "rulings on questions that 'are unrelated to factual guilt or innocence,' " including, for instance, "some problem like an error with the indictment" (citation omitted) ). At issue here is whether the non-defense-requested section 15A-931 voluntary dismissal of the murder charge was a jeopardy-terminating event tantamount to an acquittal. We conclude that it was.
 

 1. Post-jeopardy Section 15A-931 Voluntary Dismissal Amounts to an Acquittal
 

 Under N.C. Gen. Stat. § 15A-931, entitled "Voluntary dismissal of criminal charges by the State":
 

 (a) ...
 
 [T]he prosecutor may dismiss any charges stated in a criminal pleading including those deferred for prosecution
 
 by entering an oral dismissal in open court before or during the trial, or
 
 by filing a written dismissal with the clerk at any time
 
 .
 
 The clerk must
 
 record the dismissal entered by the prosecutor and
 
 note in the case file whether a jury has been impaneled or evidence has been introduced.
 

 Id.
 

 § 15A-931(a) (2017) (emphasis added). In the context of addressing a speedy trial claim, our Supreme Court has interpreted a section 15A-931
 
 *645
 
 dismissal as "a simple and final dismissal which terminates the criminal proceedings under that indictment[,]"
 
 State v. Lamb
 
 ,
 
 321 N.C. 633
 
 , 641,
 
 365 S.E.2d 600
 
 , 604 (1988) (interpreting N.C. Gen. Stat. § 15A-931 ), and explained that "[s]ection 15A-931 does not bar the bringing of the same charges upon a new indictment."
 

 Id.
 

 (citing N.C. Gen. Stat. § 15A-931 official cmt.). But the plain language of section 15A-931 explicitly requires that voluntary dismissals acknowledge whether a defendant has faced jeopardy for the charge, indicating that the legislature contemplated jeopardy attachment to a dismissed charge to be significant, and that the double jeopardy consequences of pre- and post-jeopardy dismissals would differ.
 
 See
 

 State v. Williams
 
 ,
 
 286 N.C. 422
 
 , 431,
 
 212 S.E.2d 113
 
 , 119 (1975) ("[A] statute must be construed, if possible, so as to give effect to every part of it, it being presumed that the Legislature did not intend any of its provisions to be surplusage." (citations omitted) ).
 

 Thus, in the jeopardy context, we have held that a defendant is not twice unlawfully subjected to jeopardy if the State recharges him or her with the same charge a prosecutor had previously dismissed under section 15A-931 before a jury was empaneled and sworn, because a defendant must face jeopardy before he can suffer double jeopardy.
 
 See, e.g.
 
 ,
 
 State v. Jacobs
 
 ,
 
 128 N.C. App. 559
 
 , 569,
 
 495 S.E.2d 757
 
 , 764 (1998) (rejecting a double jeopardy claim because "[t]he former prosecution was voluntarily dismissed by the State
 
 before a jury had been empaneled and before jeopardy had attached
 
 " (emphasis added) (citation omitted) );
 
 State v. Strickland
 
 ,
 
 98 N.C. App. 693
 
 , 694-95,
 
 391 S.E.2d 829
 
 , 830-31 (1990) (same);
 
 State v. Hice
 
 ,
 
 34 N.C. App. 468
 
 , 471-72,
 
 238 S.E.2d 619
 
 , 621-22 (1977) (same);
 
 see also
 

 State v. Muncy
 
 ,
 
 79 N.C. App. 356
 
 , 360,
 
 339 S.E.2d 466
 
 , 469 (1986) ("A voluntary dismissal taken by the State, pursuant to G.S. 15A-931, does not preclude the State from instituting a subsequent prosecution for the same offense
 
 if jeopardy has not attached
 
 ." (emphasis added) (citation omitted) ).
 

 But where, as here, the State voluntarily dismisses a criminal charge after a jury had been empaneled and sworn, we interpret section 15A-931 as according that dismissal the same constitutional finality and conclusiveness as an acquittal for double jeopardy purposes. We hold that if a prosecutor enters a post-jeopardy section 15A-931 dismissal of a charge, a defendant cannot again face jeopardy for that same charge. Accordingly, we conclude that defendant here was unlawfully placed twice in jeopardy when the prosecutor voluntarily dismissed the murder charge after jeopardy had attached to it, and the State years later retried him for that same offense.
 
 Cf.
 

 Midgett v. McClelland
 
 ,
 
 547 F.2d 1194
 
 , 1196 (4th Cir. 1977) ("Putting [the defendant]
 

 *420
 
 to trial on the assault charge
 
 *646
 
 after he had been put to trial on that charge once, the prosecution dropping the charge only after the testimony was in, was clearly a violation of [his] right not to be put in jeopardy twice.").
 

 Our conclusion-that a prosecutor's post-jeopardy dismissal of a criminal charge is functionally equivalent to an acquittal barring the State under double jeopardy principles from later reprosecuting that same charge-is buttressed by the official commentary to section 15A-931. "Although the official commentary was not drafted by the General Assembly," and it is thus not binding but merely persuasive, "its inclusion in The Criminal Procedure Act is some indication that the legislature expected and intended for the courts to turn to it for guidance when construing the Act."
 
 State v. Williams
 
 ,
 
 315 N.C. 310
 
 , 327,
 
 338 S.E.2d 75
 
 , 85 (1986) (finding "the logic of the official commentary [to N.C. Gen. Stat. § 15A-1235 ] to be persuasive" and adopting the opinion of the Criminal Code Commission in reaching its holding). Section 15A-931 's official commentary provides:
 

 [T]he Commission here provide for
 
 a simple and final dismissal by the solicitor
 
 .
 
 No approval by the court is
 

 required
 
 , on the basis that it is the responsibility of the solicitor, as an elected official, to determine how to proceed with regard to pending charges.
 
 This section does not itself bar the bringing of new charges. That would be prevented
 
 if there were a statute of limitations which had run, or
 
 if jeopardy had attached when the first charges were dismissed.
 

 N.C. Gen. Stat. § 15A-931 official cmt. (emphasis added). The Criminal Code Commission clearly contemplated that the State would be barred from reprosecuting a section 15A-931 voluntarily dismissed charge "if jeopardy had attached when the ... charge[ ] w[as] dismissed," and we find that logic persuasive.
 

 Based on our understanding that the Double Jeopardy Clause's protection against reprosecution of an acquitted charge "serves a constitutional policy of finality for the defendant's benefit[,]"
 
 Brown
 
 , 432 U.S. at 165, 97 S.Ct. at 2225 (citation and quotation marks omitted), and "guarantees that the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty[,]"
 
 Blueford
 
 ,
 
 566 U.S. at 605
 
 ,
 
 132 S.Ct. at 2050
 
 (citation and quotation marks
 
 *647
 
 omitted), and based on our interpretation of the contemplated finality of a post-jeopardy section 15A-931 dismissal, we explicitly hold what we have concluded in
 
 Muncy
 
 ,
 
 Strickland
 
 ,
 
 Hice
 
 , and
 
 Jacobs
 
 : if a prosecutor voluntarily dismisses a criminal charge after jeopardy has attached, it is functionally equivalent to an acquittal for double jeopardy purposes, and a defendant cannot be reprosecuted for that same offense.
 

 2. Section 15A-931 Dismissal of a Hung Charge
 

 In this case, however, it is the timing of the prosecutor's voluntary dismissal-after a hung-jury mistrial that afforded the State the right to a second trial without violating defendant's double jeopardy rights-which both parties concede presents an issue of first impression in our state. To this end, aside from relying on the basic double jeopardy principles above to compel our further holding that the timing of a post-jeopardy voluntary dismissal should not undermine its constitutional finality, we find further guidance from our Supreme Court's explanation and application of the "State's election" rule. The rule instructs that a prosecutor's pre-jeopardy silence of an intent to prosecute a potential charge in an indictment constitutes a "binding election ... tantamount to an acquittal" of that potential charge, barring the State from later attempting to prosecute that potential charge for the first time after jeopardy had already attached to the indictment.
 
 State v. Jones
 
 ,
 
 317 N.C. 487
 
 , 494,
 
 346 S.E.2d 657
 
 , 661 (1986).
 

 In
 
 Jones
 
 , the indictment charging the defendant with rape arguably supported counts of both first- and second-degree rape, but the
 
 *421
 
 State only announced its intent to pursue a conviction for second-degree rape before the jury was empaneled and sworn.
 

 Id.
 

 After jeopardy had attached to the indictment, however, the State successfully prosecuted for first-degree rape.
 
 Id.
 
 at 491-92,
 
 346 S.E.2d at 659-60
 
 .
 

 On appeal, our Supreme Court vacated the judgment entered on the first-degree rape conviction and remanded for entry of a judgment on second-degree rape.
 
 Id.
 
 at 501,
 
 346 S.E.2d at 665
 
 . The
 
 Jones
 
 Court reasoned that
 

 by unequivocally arraigning the defendant on second-degree rape and by failing thereafter to give
 
 any notice whatsoever
 
 , prior to the jury being impaneled and jeopardy attaching, of an intent instead to pursue a conviction for first-degree rape arguably supported by the short-form indictment, the State made a binding election not to pursue the greater degree of the offense, and such election was tantamount to an acquittal of first-degree rape.
 

 *648
 

 Id.
 
 at 494,
 
 346 S.E.2d at
 
 661 ;
 
 see also
 

 State v. Hickey
 
 ,
 
 317 N.C. 457
 
 , 466,
 
 346 S.E.2d 646
 
 , 652-53 (1986) ("[A]n announced election by the district attorney [to seek conviction for only some charges in an indictment]
 
 becomes binding on the State and tantamount to acquittal of charges
 
 contained in the indictment but not prosecuted at trial
 
 only
 
 when
 
 jeopardy has attached
 
 as the result of a jury being impaneled and sworn to try the defendant." (first emphasis added) (citations omitted) ).
 

 While
 
 Jones
 
 and
 
 Hickey
 
 applied the "State's election" rule in the context of its election not to seek conviction for some charges supported by an indictment until after jeopardy attached, we find the principle announced-that the event of jeopardy attachment renders such a decision binding and tantamount to an acquittal-applicable to the State's action here. In this case, jeopardy attached to the murder charge when the first jury was empaneled and sworn. The State had the right to retry defendant for that charge following the hung-jury mistrial. But after what the record indicates was at least one homicide status hearing with the trial court to determine whether the State was going to exercise its right to retry the hung charge, the prosecutor instead elected to file a section 15A-931 voluntary dismissal of that charge, explicitly acknowledging in its dismissal entry that a jury had been empaneled and evidence had been introduced, and reasoning in part that "State has elected not to re-try case." The record in this case leaves little doubt that both the trial court and the prosecutor contemplated his election to dismiss the hung charge, rather than announce the State's intent to retry it, amounted to a decision conclusively ending the prosecution, as would any reasonable defendant.
 

 A logical extension of the State's election rule applied in
 
 Jones
 
 and
 
 Hickey
 
 buttresses our conclusion here: Because the prosecutor, after acknowledging that jeopardy had attached to the murder charge, elected to dismiss the hung charge in part because the "State has elected not to re-try case," rather than announce the State's intent to exercise its right to retry it, that decision was "binding on the State and tantamount to acquittal" of the murder charge.
 
 Hickey
 
 , 317 N.C. at 446, 346 S.E.2d at 652.
 
 Cf.
 

 State v. Phillips
 
 ,
 
 127 N.C. App. 391
 
 , 392-94,
 
 489 S.E.2d 890
 
 , 891-92 (1997) (arresting judgment on a speeding conviction at superior court "because the State took a voluntary dismissal at the district court on the speeding charge" and, "[t]hus, the superior court did not have jurisdiction over the speeding offense" (citation omitted) );
 
 State v. Reeves
 
 ,
 
 218 N.C. App. 570
 
 , 574,
 
 721 S.E.2d 317
 
 , 321 (2012) (vacating judgment on a convicted charge at superior court where the State previously voluntarily dismissed that charge in district court).
 

 *649
 
 We have already rejected the State's main argument in its appellate brief: In essence, that the hung-jury mistrial "unattached" the jeopardy from the first trial. But at oral argument the State asserted that since its dismissal was entered after the hung-jury mistrial but before the second trial, the case was back in "pretrial" status, and thus its dismissal was equivalent to a pre-jeopardy dismissal. We disagree.
 

 The State cited to
 
 United States v. Sanford
 
 ,
 
 429 U.S. 14
 
 ,
 
 97 S.Ct. 20
 
 ,
 
 50 L.Ed. 2d 17
 
 (1976) (per curiam), for support. In
 
 Sanford
 
 ,
 
 *422
 
 the defendant's first trial ended in a hung-jury mistrial and, four months later, the trial court granted the defendant's motion to dismiss the indictment before the second trial began.
 

 Id.
 

 at 14
 
 ,
 
 97 S.Ct. at 20
 
 . The
 
 Sanford
 
 Court concluded that, based on the timing of the dismissal-"several months after the first trial had ended in a mistrial, but before retrial ... had begun[,]"-the case was "governed by
 
 Serfass v. United States
 
 , [
 
 420 U.S. 377
 
 ,
 
 95 S.Ct. 1055
 
 ,
 
 43 L.Ed. 2d 265
 
 (1975) ], in which we held that a pretrial order of the District Court dismissing an indictment ... was appealable[.] ..."
 
 Id.
 
 at 16,
 
 97 S.Ct. at 21
 
 . The Court reasoned: "The dismissal in this case, like that in
 
 Serfass
 
 , was prior to a trial that the Government had a right to prosecute and that the defendant was required to defend."
 
 Id.
 
 at 16,
 
 97 S.Ct. at 21-22
 
 . Thus, the
 
 Sanford
 
 Court held, the Double Jeopardy Clause did not bar the Government's appeal from that dismissal.
 

 We recognize that the sequence of events are similar-a charge was dismissed following a hung-jury mistrial but before retrial began-but the similarity ends there. The
 
 Sanford
 
 dismissal was requested by the defendant, and the hung charge was dismissed at a time when the Government intended to retry it. Here, contrarily, the State entered a non-defense-requested dismissal, and the charge was dismissed at a time when the dismissal entry itself announced the State did not intend to retry the case, effectively terminating any right the State had to reprosecute the hung charge. Accordingly, the
 
 Sanford
 
 Court's conclusion that the parties there were back in "pretrial" status for double jeopardy purposes is simply inapplicable here.
 

 IV. Conclusion
 

 Defendant faced the direct peril of being convicted and punished for murder at his first trial. "He was forced to run the gauntlet once on that charge and the jury refused to convict him."
 
 Green v. United States
 
 ,
 
 355 U.S. 184
 
 , 190,
 
 78 S.Ct. 221
 
 , 225,
 
 2 L.Ed. 2d 199
 
 (1957). The initial jeopardy that attached to the murder charge during the first trial remained intact following the hung-jury mistrial, but it terminated when the prosecutor voluntarily dismissed that charge four months later.
 

 *650
 
 We hold that a post-jeopardy section 15A-931 voluntary dismissal is to be accorded the same constitutional finality and conclusiveness as an acquittal of that charge. Further, while the State had the right to retry the hung charge without violating defendant's double jeopardy rights, in applying the State's election rule to the prosecutorial action in this case, we hold that the prosecutor's election instead to voluntarily dismiss the charge, rather than announce the State's intent to retry it, was binding on the State and tantamount to an acquittal. After defendant faced jeopardy for the murder charge at his first trial, and the prosecutor later dismissed that hung charge, the Double Jeopardy Clause's protection against successive prosecutions for the same offense barred the State from reprosecuting defendant for Deberry's murder four years later. The trial court thus erred by denying defendant's motion to dismiss the 2015 murder indictment on double jeopardy grounds. Accordingly, we vacate the judgment entered against defendant in 15 CRS 213392. In light of our disposition, we decline to address defendant's remaining arguments.
 

 VACATED.
 

 Judges TYSON and ZACHARY concur.
 

 [1]
 

 A pretrial hearing transcript reveals that another judge had previously denied the State's motion to join McFarland's and defendant's murder trials, and that the State intended to try McFarland after it tried defendant. The record is silent as to the outcome of the murder charge against McFarland.